# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
### MILWAUKEE DIVISION

| | |
|---|---|
| BRANDI THOMAS, Individually and on Behalf of All Others Similarly Situated, | Case No.: 18-cv-1779 |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **Jury Trial Demanded** |
| ESTATE INFORMATION SERVICES LLC, d/b/a EIS COLLECTIONS, | |
| Defendant. | |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff is a natural person who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family, or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt arose from an agreement or series of agreements to defer payment.

6. Defendant Estate Information Services, LLC ("EIS") is a foreign limited liability company with its principal offices located at 670 Morrison Road, Suite 300, Gahanna, Ohio 43230.

7. EIS does business under the fictitious or trade name "EIS Collections."

8. EIS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9. EIS is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

10. EIS is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

11. On or about September 11, 2018, Defendant mailed a letter to Plaintiff, regarding an alleged debt owed to "Discover Bank" ("Discover"). A copy of this letter is attached to this complaint as Exhibit A.

12. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

13. Upon information and belief, Exhibit A is a form debt collection letter, used by Defendant to attempt to collect alleged debts.

14. Upon information and belief, Exhibit A was the first written communication Defendant mailed to Plaintiff regarding the alleged debt referenced in Exhibit A.

15. Exhibit A includes the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector send the consumer along with, or within five days of, the initial communication:

2

> Unless, within thirty (30) days after receipt of this notice you dispute the validity of the debt, or any portion thereof, we will assume the debt is valid. If you notify us in writing within said 30 days that the debt or any portion thereof is disputed, we will obtain verification of the debt and we will mail such verification to you. In addition, upon your written request within said 30 days, we will provide the name and address of the original creditor if different from the current creditor.

Exhibit A.

16. Exhibit A also contains the statutory "mini Miranda" notice that that the FDCPA, 15 U.S.C. § 1692e(11), requires the debt collector provide in the initial written communication:

> This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector.

Exhibit A; *see, e.g., Chandler v. Eichel*, No. 17-cv-681, 2017 U.S. Dist. LEXIS 156168, at *12-13, 2017 WL 4236569 (S.D. Ind. Sept. 25, 2017) (describing the "mini Miranda" notice).

17. Exhibit A also contains the following:

> EIS Collections has been hired by Discover Bank to assist in managing your account. Though you previously indicated to our client that you might file for bankruptcy, no formal notice has been received that you have done so as of this date.
>
> If you have filed for bankruptcy, please immediately call us at our toll free number, which appears above, to provide the attorney and bankruptcy information. We will take no further actions to collect this debt.

Exhibit A.

18. Exhibit A instructs the consumer that, if she has filed bankruptcy, she should "immediately call us at our toll free number … to provide the attorney and bankruptcy information."

19. The instruction to contact EIS by telephone is confusing and misleading. Whether a debt is subject to a bankruptcy stay is a "dispute" under the FDCPA, and should be communicated in writing because only written disputes are effective to trigger the consumer's rights under § 1692g(b). *See, e.g., Maniaci v. Receivable Mgmt. Servs. Corp.*, No. 18-cv-200, 2018 U.S. Dist. LEXIS 109087, at *10-11 (E.D. Wis. June 29, 2018).

3

20. EIS's direction to call EIS to provide information about bankruptcy contradicts, and at a minimum overshadows, the validation notice's language that disputes must be made "in writing" in order to preserve the consumer's validation rights.

21. Upon receiving a written communication from a consumer that the consumer has filed a bankruptcy petition, 15 U.S.C. § 1692g(b) would require EIS to cease collection efforts until it could obtain verification of the debt from the creditor, who presumably would advise EIS of any bankruptcy filing. In contrast, the consumer's oral representation alone is insufficient to require, by law, EIS to cease collection activities. *McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 743 (N.D. Ill. July 8, 2003) ("If the debtor gives only *oral* notification of the dispute, the FDCPA imposes no requirement on the debt collector to obtain verification of the debt.") (citing *Fasten v. Zager*, 49 F. Supp. 2d 144, 149 (E.D.N.Y. May 20, 1999)).

22. Further, the representation that EIS will not use the consumer's attorney and bankruptcy information "to collect the debt" directly contradicts the statement that Exhibit A "is an attempt to collect a debt and **any information will be used for that purpose**."

23. Exhibit A also contains the following:

Sincerely,

Estate Information Services, LLC dba
EIS Collections

cc: Erik Preston

Exhibit A.

24. Exhibit A states that a "carbon copy" was being mailed to "Erik Preston."

25. Exhibit A does not explain who "Erik Preston" is or why he would be receiving a copy of Exhibit A.

4

26. <u>Exhibit A</u> does not identify "Erik Preston" as an employee of EIS or Discover or any other person or entity who could reasonably have access to Plaintiff's account information.

27. Upon information and belief, Plaintiff has never met nor dealt with "Erik Preston."

28. The unsophisticated consumer would be confused about whether "Erik Preston" was a third party or was somehow affiliated with Defendant.

29. Upon receiving <u>Exhibit A</u>, the unsophisticated consumer would think that Defendant was communicating about the debt with third parties.

30. The unsophisticated consumer would wonder whether "Erik Preston" maintained a clearinghouse list of consumers who allegedly refuse to pay debts, essentially acting as an unofficial and entirely unregulated credit bureau.

31. The unsophisticated consumer would be confused about whether "Erik Preston" was a debt collection lawyer that Defendant regularly contracts to collect consumer debts.

32. The unsophisticated consumer would feel confused and intimidated about whether Defendant, or the creditor, intended to "ramp up" collection efforts against her, and whether this was why Defendant was forwarding a copy of <u>Exhibit A</u> to "Erik Preston."

33. Upon information and belief, EIS does not use an attorney named Erik Preston to initiate collection actions against consumers to collect Discover accounts.

34. Upon information and belief, there is no "Erik Preston." The reference to "Erik Preston" is intended solely to confuse, mislead, and intimidate consumers into believing that EIS is or may disclose information about the consumer to third parties who have no legitimate business need for the information.

35. Plaintiff was confused and misled by <u>Exhibit A</u>.

5

36. The unsophisticated consumer would be confused and misled by Exhibit A.

### *The FDCPA*

37. The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). It is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. *Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1997); *Baker v. G.C. Services Corp.,* 677 F.2d 775, 777 (9th Cir. 1982); *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir. 1992). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§ 1692d, 1692e, 1692f and 1692g.

38. The Seventh Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." *Avila v. Rubin,* 84 F.3d 222, 227 (7th Cir. 1996); *Gammon v. GC Services, LP,* 27 F.3d 1254, 1257 (7th Cir. 1994). The standard is an objective one—whether the plaintiffs or any class members were misled is not an element of a cause of action. *Bartlett v. Heibl,* 128 F.3d 497, 499 (7th Cir. 1997). "The question is not whether these plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." *Beattie v. D.M. Collections Inc.,* 754 F. Supp. 383, 392 (D. Del. 1991).

39. Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601 *et seq.*, the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Fin. Services, Inc.,* 839 F. Supp. 941, 944 (D. Conn. 1993).

> The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and

> predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.

*N.C. Freed Co. v. Board of Governors,* 473 F.2d 1210, 1214 (2d Cir. 1973).

40. Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Baker,* 677 F.2d at 780-1; *Woolfolk v. Van Ru Credit Corp.,* 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990); *Riveria v. MAB Collections, Inc.,* 682 F. Supp. 174, 177 (W.D.N.Y. 1988); *Kuhn v. Account Control Tech.*, 865 F. Supp. 1443, 1450 (D. Nev. 1994); *In re Scrimpsher*, 17 B.R. 999, 1016-7 (Bankr. N.D.N.Y. 1982); *In re Littles,* 90 B.R. 669, 680 (Bankr. E.D. Pa. 1988), *aff'd as modified sub nom. Crossley v. Lieberman,* 90 B.R. 682 (E.D. Pa. 1988), *aff'd*, 868 F.2d 566 (3d Cir. 1989).

41. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'"); *quoting Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete

injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

42. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection

practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

43. 15 U.S.C. § 1692c(b) generally prohibits most communications with third parties:

> (b) **Communication with third parties**
> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

44. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

45. 15 U.S.C. § 1692e(5) specifically prohibits "the threat to take any action that cannot legally be taken or that is not intended to be taken."

46. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

47. 15 U.S.C. § 1692e(11) specifically prohibits "the failure to disclose in the initial written communication with the consumer . . . that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose."

48. 15 U.S.C. § 1692g(a) states, in part:

> a) Notice of debt; contents
>
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector;

b) Disputed debts
. . .
Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

49. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

50. The Seventh Circuit has held that the FDCPA's statutory disclosures must be made in a non-confusing manner, and cannot be contradicted by other information. *E.g., Bartlett v. Heibl*, 128 F.3d 497, 500-01 (7th Cir. 1997); *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 324 (7th Cir. 2016).

51. The Seventh Circuit has held that debt collectors violate the FDCPA if their mail dunning letters "claiming a legal right to disclose the nonpublic informationa bout the debtor that they had obtained as a consequence of attempting to collect the debt[.]" *Ruth v. Triumph P'Ships*, 577 F.3d 790, 801 (7th Cir. 2009).

### ***The WCA***

52. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

10

53. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

54. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

55. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

56. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

57. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

11

58. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

59. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

60. Wis. Stat. § 427.104(1)(e) states that a debt collector may not: "Disclose or threaten to disclose to a person other than customer or the customer's spouse information affecting the customer's reputation, whether or not for credit worthiness, with knowledge or reason to know that the other person does not have a legitimate business need for the information . . . ."

61. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

62. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ."

63. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

64. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

**COUNT I – FDCPA**

65. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

66. The instruction in <u>Exhibit A</u> that the consumer should contact Defendant by telephone if the consumer has filed a bankruptcy contradicts, confuses and overshadows the statutory notice that the consumer must communicate the dispute in writing to obtain the full protections of the FDCPA.

67. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), 1692e(11), 1692g(a)(4), and 1692g(b).

**COUNT II – FDCPA**

68. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

69. The instruction in <u>Exhibit A</u> that the consumer should contact Defendant by telephone to provide the consumer's bankruptcy information because Defendant will not use this information to collect the debt contradicts and confuses the statutory notice that "any information" collected will be used for the purpose of collecting a debt.

70. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), 1692e(11), 1692g(a)(4), and 1692g(b).

## COUNT III – FDCPA

71. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

72. Exhibit A states that a copy of Exhibit A is being provided to "Erik Preston."

73. Exhibit A does not identify "Erik Preston" or explain why he is receiving a copy of Exhibit A.

74. Exhibit A is confusing, misleading, and intimidating to the unsophisticated consumer, who would not know whether Defendant was disclosing the existence of the debt to third parties.

75. Exhibit A is confusing, misleading, and intimidating to the unsophisticated consumer, who would not know whether Defendant was forwarding the account to an attorney for collection purposes.

76. Defendant violated 15 U.S.C. §§ 1692c(b), 1692e, 1692e(5), 1692e(10), and 1692f.

## COUNT IV – WCA

77. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

78. Exhibit A states that a copy of Exhibit A is being provided to "Erik Preston."

79. Exhibit A does not identify "Erik Preston" or explain why he is receiving a copy of Exhibit A.

80. Exhibit A is confusing, misleading, and intimidating to the unsophisticated consumer, who would not know whether Defendant was disclosing the existence of the debt to third parties.

81. <u>Exhibit A</u> is confusing, misleading, and intimidating to the unsophisticated consumer, who would not know whether Defendant was forwarding the account to an attorney for collection purposes.

82. Defendant violated Wis. Stat. §§ 427.104(1)(e), 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## CLASS ALLEGATIONS

83. Plaintiff brings this action on behalf of a class of:

(a) all natural persons in the State of Wisconsin (b) who were mailed an initial collection letter in the form represented by <u>Exhibit A</u> to the complaint in this action, (c) seeking to collect a debt incurred for personal, family, or household purposes, (d) where the letter was mailed between November 9, 2017 and November 9, 2018, inclusive, (e) and was not returned by the postal service.

84. The class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each of the classes.

85. There are questions of law and fact common to the members of each of the classes, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA and the WCA.

86. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

87. Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

88. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

89.     Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a)     actual damages;

(b)     statutory damages;

(c)     attorneys' fees, litigation expenses and costs of suit; and

(d)     such other or further relief as the Court deems proper.

Dated:  November 9, 2018

                          **ADEMI & O'REILLY, LLP**

                    By:    <u>s/ John D. Blythin</u>
                          John D. Blythin (SBN 1046105)
                          Mark A. Eldridge (SBN 1089944)
                          Jesse Fruchter (SBN 1097673)
                          Ben J. Slatky (SBN 1106892)
                          3620 East Layton Avenue
                          Cudahy, WI 53110
                          (414) 482-8000
                          (414) 482-8001 (fax)
                          jblythin@ademilaw.com
                          meldridge@ademilaw.com
                          jfruchter@ademilaw.com
                          bslatky@ademilaw.com